IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| PEARL DURHAM, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:21-CV-01247-TJS |
| MGM NATIONAL HARBOR, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Pearl Durham (hereinafter "Ms. Durham" or "Plaintiff"), through counsel and issues the following opposition to Defendant MGM National Harbor, LLC (hereinafter MGM)"'s Motion for Summary Judgment. pursuant to Fed. R. Civ. P. 56 and in support thereof states as follows.

**INTRODUCTION**

Plaintiff was at a casino owned and operated by Defendant on April 3, 2017. The Plaintiff entered the bathroom which had no warning signs when she entered. The Plaintiff then entered the stall. When she came out of the stall an environmental service worker had a mop and bucket and was cleaning the floor opposite from the side the Plaintiff was coming out from. The Plaintiff fell on the floor due to the slippery/wet conditions. The Plaintiff suffered injuries to her left knee from this fall. On August 16, 2017, at Gallery Place in Washington, D.C. the Plaintiff had a second fall. This fall resulted in severe injuries to Plaintiff's right arm, elbow and wrist. Plaintiff asserts a premises liability-based negligence claim against MGM for injuries she incurred following both the First and Second Fall. MGM is responsible for these injuries the

Plaintiff has sustained and their motion for summary judgment should be denied as explained below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Essentially, "the moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes its motion properly, the burden shifts to the non-moving party, whose "response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Federal Rule of Civil Procedure 56 provides the types of materials that may be submitted for the court's consideration, and they include: pleadings, depositions, answers to interrogatories, admissions, and any affidavits. Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323. The facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

## ARGUMENT

**A. Defendant is not entitled to summary judgment for the Plaintiff's claim of negligence**

In *Valentine v. On Target,* 353 Md. 544, 549, 727 A.2d 947 (1999), the Court of Appeals listed the required elements necessary to establish landowner liability based on negligence:

To maintain an action in negligence, the plaintiff must assert in the complaint the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) *that*

*the defendant breached that duty,* (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."

(Emphasis supplied). See also *Moore v. Jimel,* 147 Md.App. 336, 337-38, 809 A.2d 10 (2002); *Corinaldi v. Columbia,* 162 Md.App. 207, 218, 873 A.2d 483 (2005).

In *Rehn v. Westfield* America, the Court stated in order to sustain a cause of action, the appellant must prove not only that a dangerous condition existed but also that the appellees "had actual or constructive knowledge of the dangerous condition and that the knowledge was gained in sufficient time to give [them] the opportunity to remove it or to warn the invitee." *Rehn v. Westfield America,* 153 Md.App. 586, 593, 837 A.2d 981 (2003), *cert. denied,* 380 Md. 619, 846 A.2d 402 (2004). See also *Giant Food, Inc. v. Mitchell,* 334 Md. 633, 636, 640 A.2d 1134 (1994); *Moulden v. Greenbelt Consumer Services, Inc.,* 239 Md. 229, 232, 210 A.2d 724 (1965); *Tennant v. Shoppers Food Warehouse,* 115 Md. App. 381, 389-90, 693 A.2d 370 (1997)

Judge Henderson for the Court of Appeals made it clear what the knowledge requirement is for the landowner for premises liability in *Lexington Market Authority v. Zappala,* 233 Md. 444, 445-46, 197 A.2d 147 (1964):

The plaintiff was a business invitee, to whom the proprietor owed a duty to exercise ordinary care to keep the premises in a reasonably safe condition. *Nalee, Inc. v. Jacobs,* 228 Md. 525, 529, 180 A.2d 677; *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 117, 113 A.2d 405; *Moore v. American Stores Co.,* 169 Md. 541, 546, 182 A. 436. See also the cases in 62 A.L.R.2d 6. But the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence. *Montgomery*

*Ward v. Hairston,* 196 Md. 595, 78 A.2d 190; *316 *Rawls v. Hochschild, Kohn & Co., supra.* In the cases last cited the issue was withdrawn from the jury.

In Defendants Discovery responses, they state "Plaintiff should have been reasonably prudent in her actions upon seeing a yellow sign stating "caution, wet floor" posted at the entrance of the restroom." See Exhibit 1 at Response 19 and 23. This creates a clear factual dispute as the Defendant suggests there was a sign at the entrance before the Plaintiff entered the restroom. That is not correct. Plaintiff has stated and will testify to the fact that there was no sign before the restroom's entrance about a wet floor. See Exhibit 2 at Response 8 and 9. This is a material fact to the case regarding the negligence of the Defendant.

Defendant also that denied any hazardous condition existed on the premises when asked about the slippery/wet condition of the floor. See Exhibit 1 at response 20. This creates a factual issue as to the condition of the floor at the time of the fall. Plaintiff has indicated that the floor was being cleaned and was slippery/slick at the time she fell. See Exhibit 2 at response 8.

The Plaintiff in this case is an invitee since she was a customer at MGM. This means the Plaintiff was owed a duty to have the premises kept in a reasonably safe condition. The notice requirement is satisfied in this case because Defendant created the dangerous condition with its use of an environmental service worker cleaning the bathroom which caused the floor to be slick. There was no worker in the bathroom when the Plaintiff entered. See exhibit 3 at 58:12-18. There was no puddle of water observed or slick floor when Plaintiff entered the bathroom. See exhibit 3 at 65:11-66:7. The environmental service worker failed to place a sign outside of the bathroom to indicate the dangerous conditions of the floor before the

Plaintiff entered the restroom. See Exhibit 2 at Response 8 and 9. This constitutes a breach of duty by the Defendant as reasonably prudent person would put up a sign warning of a slippery/slick floor. Instead, the environmental service went outside the bathroom and put up a sign in front of the bathroom after Plaintiff fell. See Exhibit 2 at Response 8 and 9. Although there is much disagreement about the extent of injuries by the Plaintiff in this case, it is not disputed that the Plaintiff did fall in the bathroom on Defendant's premise and did suffer injuries from that fall, thus meeting the required elements for a negligence claim.

### i. Plaintiff has shown sufficient evidence that a dangerous condition existed

In Maryland, the liability of an owner of real property is dependent upon the standard of care owed an individual. The standard of care, in turn, depends upon the individual's status while on the real property. *Rowley v. City of Baltimore,* 305 Md. 456, 464, 505 A.2d 494, 498 (1986); *Sherman v. Suburban Trust Co.,* 282 Md. 238, 241-242, 384 A.2d 76, 79 (1978); *Bramble v. Thompson,* 264 Md. 518, 521, 287 A.2d 265, 267 (1972). The status may be that of invitee, licensee by invitation, bare licensee, or trespasser. A landowner must use reasonable and ordinary care to keep the premises safe for an invitee, defined as one permitted to remain on the premises for purposes related to the owner's business. *Bramble,* 264 Md. at 521, 287 A.2d at 267.

The Plaintiff stated when leaving the bathroom, an environmental service worker was mopping the floor. See Exhibit 3 at 56:20-57:11. There was no sign outside of the bathroom before the Plaintiff entered the bathroom that warned of cleaning, rather the cleaning began while the Plaintiff was in the bathroom stall. See Exhibit 2 at Response 8 and 9. After the Plaintiff fell in Defendant's bathroom, the cleaning lady/janitor went outside the bathroom to place a sign that she was inside cleaning. See Exhibit 2 at Response 8 and 9. If the sign was

placed before the plaintiff entered then Defendant's assertion that the danger was open and obvious would be correct, but that is not what happened. Also, there was no sign inside the bathroom to warn the Plaintiff that the area immediately in front of the stalls was wet. See Exhibit 2 at Response 8 and 9.

Defendant, essentially says that if you do not observe water before slipping and falling then it does not exist, and if you do observe it, then it is your fault for slipping in it. A very convenient way to escape any culpability for a customer who slips and falls on their premises. The facts of our case indicate that the Plaintiff left the bathroom stall and as she came out of the stall she did see a woman cleaning the bathroom and in a near simultaneous sequence of events had fallen on the slick bathroom floor. See Exhibit 3 at 56:20-57:11. The Plaintiff indicated the floor was being cleaned as the environmental service worker had a wet mop there in the bathroom and was in the process of cleaning, and that the floor was slick. See Exhibit 3 at 56:20-57:11. Any reasonable person in the cleaner's position would have placed a warning sign on the side of the bathroom which she had already cleaned and was wet in case someone was in the stall before she entered the bathroom to clean.

**ii. Defendant's assertion that a dangerous condition would be open and obvious is incorrect**

Defendant cited caselaw suggesting that circumstances such as plaintiff's observation of employees mopping a floor or observing cleaning tools can make a dangerous condition open and obvious. The issue with this assertion is that in our case the Plaintiff did not have the luxury of time to react to what was seen. Plaintiff is an elderly women and she saw the environmental service worker cleaning as she was walking out of the stall. In a near simultaneous sequence of events she slipped and fell. See Exhibit 3 at 65:11-21; 66:5-7. There was not sufficient time to make an observation of a dangerous condition and then try to avoid it. Also, it is not necessarily

obvious when a floor is slick. A floor can look in normal conditions and be slick if it has been touched with water.

**MGM IS NOT ENTITLED TO SUMMARY JUDGMENT FOR DAMAGE RELATED ISSUES**
    **I. Second fall**

The Plaintiff's damages should not be limited to the first fall. The Plaintiff's first fall occurred on April 3, 2017, where the Plaintiff injured her left knee. The second fall occurred on August 16, 2017. The Plaintiff first fall lead to the Plaintiff's second fall. Between the two falls, the Plaintiff had a primary diagnosis on July 14, 2016, and was noted to have been walking with a cane and have pain present on the lateral aspect of the leg from the hip into the foot. See Exhibit 4. She had a balance confidence scale of 20% and was treated with therapy. *Id*. On 6-7-17, she was also noted to be having some difficulties with her left knee causing some trouble. *Id*. She had complaints of "knee buckling" on 6-14-17. *Id*. Her knee was noted to be giving her trouble descending stairs. *Id*. On 7-6-17, she was noted to be having complaints of 7/10 pain level in the right knee as well as having some pain in her back. *Id*. On 8-23-17, she was noted to have injured her right arm in a fall. *Id*. The Plaintiff had no history of falls before her fall at the MGM Casino. She did not walk with a cane, but after the fall she had less balance and mobility and was using a cane to walk around. After the first fall she experienced an increase in pain and knee troubles that lead to the second fall. Plaintiff's expert wrote his report based on medical records reviewed and the connection between the 2 falls and this is an issue that can be flushed out through direct examination and cross examination to further elaborate on the connection between the two falls. Plaintiff's expert noted that treatment was fair, reasonable, necessary, and causally related to the injury sustained when she fell on August 16, 2017. *Id*. MGM Should be responsible for the damage that Plaintiff experienced from the second fall.

## II. Plaintiff was not contributorily negligent

The Plaintiff was not contributorily negligent in this case for failing to follow medical advice. Contributory negligence is "the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Schweitzer v. Brewer*, 280 Md. 430, 439- 40 (1977) (citations omitted). Plaintiff's expert witness Dr. Joel Fetcher reviewed the medical records for the Plaintiff and produced an expert report dated November 21, 2021. See Exhibit 4. In the report, Dr. Fetcher makes note that Plaintiff was told she had a Monteggia fracture and reduction was recommended. *Id*. A gentle reduction was attempted without sedation on the Plaintiff and a splint was also applied to the injury. *Id*.

Dr. Fetcher noted in his report that on August 23, 2017, "surgical treatment of the fracture was recommended, which the patient did not want to pursue. She chose to be treated nonoperatively." *Id* at 2. Plaintiff saw an orthopedic surgeon on December 13, 2017, who recommended she participate in a trial of stellate ganglion blocks, but she elected not to participate as she was "worried about the risks." *Id*. On January 2, 2018, the surgeon went over the pros and cons of the stellate ganglion block. After considering the risks involved, Plaintiff decided she did not want to move forward with that approach. Plaintiff continued therapy and taking a Medrol dosepak. *Id*.

Plaintiff did not have surgery performed on her arm after the second fall. This fact does not mean the Plaintiff was contributorily negligent. There are different factors that go into having a surgery. Plaintiff needed to undergo sedation to have the surgery performed and this was of great concern to the Plaintiff. Her family was not aware she was at the hospital at this time and she did not feel comfortable going through a surgery along with potential side effects and

consequences of the surgery. She wanted her family to be around her if she was going to undertake a major event of being sedated and going under the knife.

### III. MGM is not entitled to summary judgment regarding Lost Wages

Plaintiff has not been able to work since the injuries she sustained from her fall at MGM in 2017. Plaintiff is not able to write or type because of the inability to use her hand "Evidence in a wage loss claim reflects loss of specific opportunities, such as those represented by an existing job. Proof typically shows past wage and future prospects in the job, coupled with proof that the plaintiff can no longer work or can work only part time. For example, evidence might show that the plaintiff was studying to become an engineer and because of his injury he could no longer master the materials, or general capacity for advancement which has been limited by the injury." *Dackman v. Robinson*, 464 Md. 189, 217 (2019) (quoting *Sugarman v. Liles*, 460 Md. 396, 438 (2018)).

Plaintiff testified that she was offered a job for AARP. See Exhibit 2 at 186:11-192:3. Plaintiff testified that she put in many applications for jobs and was actively looking for a job around and at the time of the fall at MGM. See Exhibit 2 at 186:11-192:3. Plaintiff also testified that after her initial diagnoses of major depression which qualified her for social security disability, she went back to school and rehabilitated herself and with this diploma, she was actively looking for a job until this fall happened a MGM followed by the second fall. See exhibit 2 at Response 7.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court Deny MGM's Motion for Summary Judgment.

## NOTICE AND CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of November 2022, a copy of Plaintiff's Opposition to Motion for Summary Judgment was served via Pacer's electronic filing system to Defendant's Counsel Ashley Wetzel, Esq. and Mike Halaiko, Esq.

\_\_/s/_____
Bryson Stephen, Esq.

Respectfully Submitted

\_\_/s/_____
Bryson Stephen, Esq.
Fed Bar No: 22329
Law Office of Chidinma Iwuji
419 7th Street, NW, Suite 405
Washington, D.C. 20004
Cell: 740-228-1145
Email: stephenbattorney@outlook.com
*Counsel for Plaintiff*

Respectfully submitted,

/s/ Chidinma Iwuji_____
Chidinma Iwuji, Esq.
Pro Hac Vice
Law Office of Chidinma Iwuji
419 7th Street, Suite 405
Washington, D.C. 20004
(571)-276-2136
*Counsel for Plaintiff*